UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BILLIEKATE WEBSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:13-CV-497 |
| | ) | (VARLAN/GUYTON) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 8, 9] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 12, 13]. Billiekate Webster ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed a Title II application for a period of disability and disability insurance benefits under the Social Security Act on August, 1, 2011, alleging disability since October 9 2010, due to temporomandibular joint, menieres, fibromyalgia, and depression. The Plaintiff's application was denied initially and upon reconsideration. The Plaintiff then requested a hearing,

1

which was held before ALJ Douglas J. Kile, in Knoxville, Tennessee, on October 16, 2012. The Plaintiff was present and testified. Thereafter, the ALJ issued an unfavorable decision on November 1, 2012, finding the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since October 9, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: fibromyalgia, depression, headaches, and anxiety (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium simple unskilled work as defined in 20 CFR 4704.1567(c) except the claimant is precluded from any work requiring excessive vibration, frequent contact with general public and problems following up on job instructions. The claimant is restricted from work around unprotected heights and dangerous machinery and she cannot work with frequent overhead motion. The claimant may miss up to two days a month due to her impairments.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 9, 1952 and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching retirement age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 9, 2010, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 14-19].

## II. DISABILITY ELIGIBILITY

An individual qualifies for disability insurance benefits if he or she: (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. 42 U.S.C. § 423(a)(1).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

3

twelve months." 42 U.S.C. § 423(d)(1)(A). An individual shall be determined to be under a disability only if his or her physical or mental impairment or impairments are of such severity that he or she is not only unable to do previous work but cannot, considering the individual's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which the individual lives, or whether a specific job vacancy exists for the individual, or whether the individual would be hired if he or she applied for work. § 423(d)(2)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the plaintiff could perform.

Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence,

5

nor decide questions of credibility." Walters, 127 F.3d at 528.

The Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless. See id. at 546-47.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence. [Doc. 9 at 2]. Citing a number of errors committed by the ALJ, the Plaintiff essentially claims that the ALJ's credibility finding as well as the medical evidence relied on fails to substantiate a conclusion that the Plaintiff is capable of performing medium work given her claims of fibromyalgia and associated pain and symptoms. [Id. at 2-3].

The Commissioner asserts that the ALJ properly analyzed the Plaintiff's credibility and further considered all relevant evidence in assessing the Plaintiff's functional limitations, and therefore, the ALJ's RFC determination is supported by substantial evidence. [Doc. 13 at 4].

## V. ANALYSIS

On October 16, 2012, the ALJ held a hearing with regard to the Plaintiff's claim. [Tr. 24-41]. The Plaintiff testified that she is unable to work due to fibromyalgia. [Tr. 26-27]. She

6

explained that she experiences pain 24-hours a day and that the pain moves around her body. [Tr. 27]. Even when taking medication, the Plaintiff characterized her pain as an eight on a scale of one to 10. [Tr. 28]. The Plaintiff described doing household chores with some difficulty, such as dropping plates when washing dishes and vacuuming only for a short period of time, and noted the need to nap anywhere from 20 minutes to three hours, although her pain makes it difficult to sleep. [Tr. 28-29]. In regard to physical limitations, the Plaintiff testified that she can lift 10 to 15 pounds, sit for 10 to 15 minutes, stand for about an hour, and walk one block before having to stop. [Tr. 29]. In terms of mental limitations, the Plaintiff stated that she is depressed once or twice a month, during which time she has difficulty thinking and experiences crying spells, and has five to six bad days a week. [Tr. 30-31]. She attends monthly therapy sessions to help cope with her symptoms. [Tr. 30]. While driving to the hearing, the Plaintiff stated that she experienced an anxiety attack which forced her to pull over. [Tr. 34]. Additionally, the Plaintiff testified that she drew unemployment benefits for a year-and-a-half, during which time she looked for at least part-time work as required by law. [Tr. 33].

In the disability determination, the ALJ found that the Plaintiff was "less than credible" because she drew unemployment benefits during the time she alleged disability. [Tr. 16]. The ALJ explained, "in order to draw unemployment, the claimant would have had to certify that she was ready, willing, and able to work, but [] was unable to find work." [Id.].

The ALJ then discussed the medical and non-medical evidence that supported the Plaintiff's RFC of medium work.[1] [Tr. 17-18]. Specifically, the ALJ discussed a Function

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c).

7

Report completed by the Plaintiff, finding that the report illustrated an active lifestyle of daily living activities. [Tr. 17, 157-66]. In particular, the ALJ noted that the Plaintiff reported independence in self-care as well as the ability to take care of pets, prepare simple food and meals, perform light household chores, drive, go for walks, go out alone, shop, manage finances, read for short periods, and watch TV. [Tr. 17, 158, 161, 162]. In addition, the Plaintiff reported socializing with family and friends by attending yard sales and family gatherings. [Tr. 17, 163].

Turning to the medical evidence, the ALJ discussed a consultative examination performed by Jesse Doty, M.D., on September 17, 2011. [Tr. 17]. The Plaintiff reported to Dr. Doty that she was currently being treated for fibromyalgia. [Tr. 251]. She described her pain as an eight out of 10 on average and that it felt like spasms, aching, and dull, and expressed that nothing seemed to make the pain improve. [Tr. 251]. The Plaintiff reported she could walk five to 10 minutes without sitting, she could stand a few hours without sitting, and she could sit 30 minutes before needing to move due to aches and pains. [Tr. 252].

Upon physical examination, Dr. Doty noted that the Plaintiff had full range of motion in her spine, shoulders, elbows, writs, hips, knees and ankles, but experienced pain on every part of her body that Dr. Doty touched or pressed, including her chest, shoulders, sternum, spine, and thighs. [Tr. 252-53]. The Plaintiff presented no neurological deficits. [Tr. 252]. In addition, the Plaintiff could perform a deep knee bend greater than 90 degrees and could perform a heel and toe walk. [Tr. 252].

In conclusion, Dr. Doty noted that the Plaintiff had fibromyalgia pain wherever he pushed on her body; she was physically fit and could stand, sit, walk, crawl, squat, and stoop; and she could hear, see, talk, and communicate effectively. [Tr. 253]. Dr. Doty remarked that

the Plaintiff "possibly does have achy pain which would be very annoying and it sounds that she has problems with jobs where she has to stay sedentary because moving about helps her." [Id.]. The ALJ found the exam "unremarkable except for pain complaints." [Tr. 17].

The ALJ then discussed the Plaintiff's physical and mental health records from her primary care provider, Cherokee Health Systems. [Tr. 17]. Regarding Plaintiff's mental health, the ALJ noted that on August 20, 2010, the Plaintiff reported feeling depressed because she had been demoted from work and that, as a result, she felt uncomfortable returning to work. [Tr. 17, 242]. The ALJ then pointed to an October 15, 2010 progress report which showed that the Plaintiff conveyed she was motivated to seek work after being terminated. [Tr. 17, 231]. In addition, a September 19, 2011 progress report related that the Plaintiff's depression was controlled and that the Plaintiff reported doing better and walking every day. [Tr. 17, 309].

As to the physical medical records, the ALJ found that treatment notes dated August 2010 through February 2012 were consistently "within normal limits with no reports of any deficits, abnormalities, or that of a functional limitation." [Tr. 17].

The ALJ then assigned "great weight" to the state agency psychological and medical consultants "because they are consistent with the physical consultative examination report from Dr. Doty and the medical evidence of record from Cherokee Health Systems." [Tr. 18]. The state agency psychological consultant opined that the Plaintiff could: understand and remember simple, detailed, and multi-step tasks that do not include executive level tasks; sustain concentration, persistence, and pace for two to four hours at a time; sustain appropriate interactions with the public, coworkers, and supervisors; and set goals and adapt to infrequent change. [Tr. 271]. The state agency physical consultant opined that the Plaintiff could:

lift/carry 50 pounds occasionally and 25 pounds frequently; stand, walk, and/or sit six hours in an eight-hour workday; and push and/or pull with unlimited ability. [Tr. 277].

The Court observes that when a claimant's medically determinable "severe" impairment is fibromyalgia, as found by the ALJ here, the extent to which the claimant is functionally limited usually cannot be substantiated with objective medical evidence.[2] While "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits," Vance v. Comm'r of Soc. Sec., 260 F. App'x 801, 806 (6th Cir. Jan. 15, 2008) (emphasis in the original), our appellate court has expressly recognized the difficulty that fibromyalgia presents for disability determination:

> In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results–a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in [fibromyalgia] patients.

Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 817-18 (6th Cir. 1988).

As it is difficult to pin down objective medical evidence to support a diagnosis of fibromyalgia, it is even more difficult to produce objective medical evidence that shows the degree to which fibromyalgia limits the functioning of its victim. Because of the subjective nature of fibromyalgia, the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance.

"In evaluating complaints of pain, an ALJ may properly consider the credibility of the

---

[2] Fibromyalgia "is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 860, n.2 (6th Cir. Jan. 7, 2011) (quoting Stedman's Medical Dictionary for the Health Professions and Nursing at 541 (5th ed. 2005)).

10

claimant." Walters, 127 F.3d at 531. An ALJ's finding about the credibility of a claimant's allegation of disabling pain is entitled to deference. Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 531 (6th Cir. 1992) (citing Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). However, "while credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence." Rogers v. Commissioner, 486 F.3d 234, 249 (6th Cir. 2007). The ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (1996).

The Court finds that substantial evidence does not support the ALJ's RFC determination for several reasons. First, the medical evidence discussed by the ALJ is not particularly helpful because it consists of objective clinical findings which are of little probative value in fibromyalgia cases. See Rogers, 486 F.3d at 243–44 (noting that "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant"). Specifically, the ALJ found that Dr. Doty's consultative examination was "unremarkable" aside from complaints of pain. However, Dr. Doty's findings of full range of motion and the appearance of normal muscle strengths is exactly the norm for fibromyalgia patients and says nothing about the impairment's ultimate effect. See Preston, 854 F.2d at 820 (noting that fibromyalgia "patients manifest normal muscle strength and neurological reactions and have a full range of motion"). The same holds true for the "normal limits" found within Cherokee Health Systems' treatment notes. As a result,

11

the Court disagrees that this evidence is "consistent" with the nontreating, nonexamining state agency physician's opinion that the Plaintiff can perform medium work.

In Preston, the Sixth Circuit was unpersuaded by the ALJ's finding of "fairly normal clinical and test results" where medical records consistently documented the plaintiff's complaints of pain, stiffness, and fatigue—classic symptoms of fibromyalgia—and the plaintiff's treating physician had opined that she suffered from fibromyalgia based upon observations of characteristic tenderness in certain focal points, recognition of hallmark symptoms, and systematic elimination of other diagnosis. 854 F.2d at 8210.

Similarly, here, the record is well documented with the Plaintiff's complaints of and treatment for pain, depression, and fatigue. [Tr. 213, 214, 212, 232, 239, 242, 246, 247, 306, 307, 311, 313, 322]. Her motor activity was also consistently noted as slow. [Tr. 288, 299, 300, 306, 311, 313, 328, 329, 330]. In August 2010, the Plaintiff reported that she had been demoted at work as a result of too many errors. [Tr. 246]. The Plaintiff explained that her fibromyalgia had worsened and that her health problems were causing her extreme fatigue. [Tr. 242, 246]. While the ALJ noted that in October 2010 the Plaintiff reported she was motivated to seek work, the Plaintiff's following visit in November 2010 related that she felt more discouraged, less motived to find work, and that her fibromyalgia symptoms had worsened and were exacerbated. [Tr. 228].

Moreover, in September 2010, the Plaintiff's physician at Cherokee Health Systems referred her to Charles G. Durand, M.D., to determine whether her diagnosis of fibromyalgia was correct and for Dr. Durand to suggest any refinements in the Plaintiff's treatment. [Tr. 201]. Dr. Durand noted that the Plaintiff's condition was characterized by muscle aches, fatigue, and

12

soreness in her arms, forearms, hands, feet, hips, and legs. [Id.]. He noted that her symptoms worsened with "the stresses to be productive at work and to have regular attendance at her duties." [Id.]. Upon examination, Dr. Durand found tender points in the Plaintiff's supraspinatus, trapezius, interscapular, subacromial, paralumbar gluteal, and vastus medialis bilaterally. [Tr. 202]. He also noted tenderness in nine trigger points in the mid-calf bilaterally and the thigh bilaterally. [Id.]. Dr. Durand found that the Plaintiff's area of tenderness and noted fatigue and depression was consistent with a finding of fibromyalgia. [Id.]. Dr. Duran ordered certain testing to rule out a remote possibility of polymyositis or polymyalgia rheumatica as accounting for any of the Plaintiff's symptoms. [Id.]. In conclusion, Dr. Duran recommended that the Plaintiff continue her current medication regimen as prescribed by Cherokee Health Systems and to exercise, such as walking or climbing stairs, for at least 20 minutes a day, three times a week. [Id.].

Based upon the above, the Court finds the ALJ applied the wrong standard for assessing the effects of the Plaintiff's fibromyalgia by focusing on the seemingly normal, objective finings mentioned throughout the medical record. The decision fails to reconcile any of the numerous treatments notes from Cherokee Health Systems or Dr. Duran's examination which document hallmark symptoms of fibromyalgia, *i.e.*, pain, fatigue, depression, and tenderness upon examination. In addition, the significance of Dr. Doty's observation of fibromyalgia pain everywhere he pushed on the Plaintiff's body and the appearance of "achy pain" was overlooked by the ALJ.

Second, the Court is not persuaded that the Plaintiff's daily living activities necessarily support an RFC of medium work. The ALJ noted an independence in self-care and an ability to

13

take care of pets, prepare simple meals, perform light household chores, drive, walk, go out alone, shop in stores, manage finances, read for short periods of time, watch TV, and socialize by attending yard sales and family gatherings. In Rogers, the Sixth Circuit criticized the ALJ's reliance on the plaintiff's ability to engage in activities including, driving, cleaning her apartment, caring for her two dogs, doing laundry, reading, performing stretching exercises, and watching the news. 486 F.3d at 248. The court explained that "these somewhat minimal daily functions are not comparable to typical work activities." Id.; see also Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 864 (6th Cir. Jan. 7, 2011) (holding that the plaintiff's ability to go to the grocery store, the pharmacy, and church, prepare her own meals most of the time, dress herself without assistance, and drive for at least thirty minutes per day were "minimal activities [] hardly consistent with eight hours' worth of typical work activities"). Moreover, Rogers criticized the ALJ's mischaracterization of the plaintiff's testimony regarding the scope of her reported daily activities as well as the physical effects that were coextensive with her performance of such activities. Id. at 248-49 (finding that "[t]he ALJ likewise failed to note or comment upon the fact that Rogers receives assistance for many everyday activities and even personal care from her children, who live close by").

In the present matter, while the Plaintiff did report she could perform light housekeeping, care for her animals, and do laundry, the ALJ failed to mention that the Plaintiff also explained that she "cannot do the above even if I want to" on bad days. [Tr. 158]. In addition, the Plaintiff related that her cousin helps with the care of her pets, that it takes a long time to complete housework, and that she socializes with friends and family only on a bi-monthly, monthly, or yearly basis. [Tr. 161-63]. The Court further notes that Plaintiff's activity of walking was

14

specifically encouraged by both Dr. Durand and Cherokee Health Systems [Tr. 202, 309], and Cherokee Health Systems related the positive psychological benefits of having pets. [Tr. 313]. Thus, while it was proper for the ALJ to consider the Plaintiff's daily activities in assessing her RFC, the cited activities, as characterization by the ALJ, particularly in light of the medical evidence discussed, do not provide substantial evidence that the Plaintiff can perform medium work. See Rogers, 486 F.3d at 249 ("[T]he fact that a patient is encouraged to remain active does not reflect the manner in which such activities may aggravate the patient's symptoms. Notably, Rogers' own treating physicians also recommended that she remain as active as possible, yet this did not alter their opinions as to her functional limitations and work restrictions.").

Finally, the Court takes issue with the ALJ's credibility determination. The ALJ's sole reasoning for finding the Plaintiff "less than credible" was because she received unemployment benefits. The Court of Appeals for the Sixth Circuit has recognized the seemingly inconsistent nature of receiving unemployment benefits while alleging disability. See Workman v. Comm'r of Soc. Sec., 105 F. App'x 794, 801-02 (6th Cir. July 29, 2000) (finding that an "[a]pplications for unemployment and disability benefits are inherently inconsistent"); see also Bowden v. Comm'r of Soc. Sec., No. 97-1629, 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999) (noting that the claimant "offers no reasonable explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work"). Relying on Workman, this District has recognized that unemployment benefits are relevant to a credibility determination when assessing a plaintiff's claim for disability. See Messina v. Colvin, No. 3:12-CV-150, 2013 WL

15

4852328, at *11 (E.D. Tenn. Sept. 10, 2013) (holding "that the ALJ did not err in discounting the Plaintiff's credibility based, in part, on her receipt of unemployment benefits").

Since Workman, however, the Social Security Administration has expressly stated that receiving unemployment benefits, alone, is not inconsistent with an application for disability benefits.[3] In August 2010, the Chief ALJ for the Social Security Administration released a memorandum reminding ALJs that the "[r]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits. The receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled." Memorandum from Frank A. Cristaudo, Chief Administrative Law Judge, Social Security Administration, to all Administrative Law Judges (2010), http://ssaconnect.com/tfiles/UC-2010.pdf. The Chief ALJ explained that because the disability decisionmaking processing is uncertain and quite lengthy, a claimant should not be forced to choose between applying for unemployment and disability benefits. Id. Nonetheless, an ALJ may properly consider the receipt of unemployment benefits together with all the other medical and nonmedical evidence presented before him. [Id.]. Generally, "the underlying circumstances will be of greater relevance than the mere application for and receipt of the benefits." Id.

In light of prevailing case law and the Administration's position expressed above, the Court finds that the receipt of unemployment benefits, while an appropriate factor that should be considered in disability claims, is only one of the many factors an ALJ must consider, and as such, the appropriate weight due to the receipt of unemployment benefits will depend on the

---

[3] The Tennessee Attorney General has similarly found that a categorical rejection of disability benefits due to a claimant's receipt of unemployment benefits is inconsistent with federal requirements. Tenn. Att'y Gen. Op. No. 10-106, 2010 WL 4312767 (Oct. 27, 2010).

16

particular facts of each case.

Accordingly, the Court finds that while it was appropriate for the ALJ to consider the receipt of unemployment benefits in this case, the ALJ erroneously found that factor alone was sufficient to discount the Plaintiff's credibility. This finding is directly at odds with the Administration's own rule. The ALJ does not appear to have considered the "underlying circumstances" in determining the amount of weight the receipt of unemployment benefits should carry in this case. For instance, although the Plaintiff received unemployment benefits after her alleged onset date, she began receiving benefits almost a year before she filed her application for a period of disability and disability insurance benefits. Treatment notes document that when the Plaintiff was initially let go from her job in October 2010, she was "motivated to pursue other work" [Tr. 231], but as her complaints of fibromyalgia and depression worsened, the Plaintiff became less motivated to find work or participate in activities [Tr. 228, 227, 307, 312]. For this reason, as well as the ALJ's failure to apply the correct legal standard in assessing the Plaintiff's severe impairment of fibromyalgia, the Court is unable to find that the ALJ's RFC determination is supported by substantial evidence.

Accordingly, the Court will recommend that this case be remanded to the ALJ to reevaluate the Plaintiff's claim consistent with this Circuit's standard for assessing fibromyalgia. In addition, the Court will recommend that the ALJ acquire additional medical evidence and/or opinions as needed to fully develop and better address the functional limitations, if any, caused by the Plaintiff's fibromyalgia.

17

Case 3:13-cv-00497-TAV-HBG  Document 14  Filed 07/28/14  Page 17 of 18  PageID #: 472

## VI. CONCLUSION

Therefore, it is hereby **RECOMMENDED**[4] that Plaintiff's Motion for Judgment of the Pleadings [**Doc. 8**] be **GRANTED,** the Commissioner's Motion for Summary Judgment [**Doc. 12**] be **DENIED,** and the case be remanded consistent with this opinion.

Respectfully submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).